```
                IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TEXAS (EL PASO)

UNITED STATES OF AMERICA,    .  Case No.: 3:25-MJ-02164-MAT
                             .
            Plaintiff,       .       FILED
                             .     July 14, 2025
      vs.                    .  CLERK, U.S. DISTRICT COURT
                             .  WESTERN DISTRICT OF TEXAS
                             .
LEONEL SOTELO-SANTILLAN,     .  BY:___Belinda Gamez___
                             .             DEPUTY
            Defendant.       .  Thursday, May 15, 2025
. . . . . . . . . . . . . .  .  2:09 P.M.
```

**TRANSCRIPT OF PRELIMINARY AND DETENTION HEARING**
**BEFORE THE HONORABLE MIGUEL A. TORRES**
**UNITED STATES MAGISTRATE COURT JUDGE**

APPEARANCES:

For the Government:     United States Attorney's Office
                        BY: SCOTT WISNIEWSKI, ESQUIRE
                        700 East San Antonio Avenue, Suite 200
                        El Paso, Texas 79901
                        (915) 534-3464
                        scott.wisniewski@usdoj.gov

For the Defendant:      Office of the Federal Public Defender
                        BY: ERIK ANTHONY HANSHEW, ESQUIRE
                        700 East San Antonio Avenue, D-401
                        El Paso, Texas 79901
                        (915) 534-6525
                        Erik_Hanshew@usdoj.gov

For the Interpreter:    B. Espinosa

Deputy Clerk:           Fidel Morales
                        United States District Court
                        525 Magoffin Avenue, Suite 105
                        El Paso, Texas 79901

Transcription Service:  Liberty Transcripts
                        9107 Topridge Drive
                        Austin, Texas 78750
                        (847) 848-4907
                        DBPATEL1180@GMAIL.COM

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

INDEX
                                                             Page

Case called                                                     3
Court provides Brady Advisement                                 3
Arguments on Probable Cause and Government's Motion To
  Detain
    By: Mr. Wisniewski                                         14
    By: Mr. Hanshew                                            15
Court's Rulings                                                15

End of Proceedings                                             16
Certification of Transcriber                                   17


WITNESSES FOR THE GOVERNMENT:

FABIOLA CINTRON
    Direct Examination by Mr. Wisniewski                        5
    Cross-Examination by Mr. Hanshew                           11

WITNESSES FOR THE DEFENDANT:

 (None)




                                       Identified    Received

EXHIBITS FOR THE GOVERNMENT:

 (None)

EXHIBITS FOR THE DEFENDANT:

 (None)

1 **EL PASO, TEXAS, THURSDAY, MAY 15, 2025, 2:09 P.M.**
2             THE COURT:  All right.  The Court calls
3    EP:25-M-2164, United States of America versus Leonel
4    Sotelo-Santillan.
5             MR. WISNIEWSKI:  Scott Wisniewski on behalf of the
6    United States.
7             MR. HANSHEW:  Erik Hanshew on behalf of Mr. Sotelo.
8    We're ready.
9             THE COURT:  All right.  Pursuant to the Due Process
10   Protections Act, the Government is put on notice as to its
11   disclosure obligations under the Supreme Court precedent of
12   Brady v. Maryland.  The failure to comply with those
13   obligations could result in sanctions on the Government.  A
14   written notice to this effect will follow this hearing.
15            Call you first witness, please.
16        MR. WISNIEWSKI:  The Government calls Fabiola Cintron.
17            THE COURT:  Good afternoon.
18          FABIOLA CINTRON, GVOERNMENT'S WITNESS, SWORN
19            THE COURT:  All right.  Have a seat, please.
20            All right.  You may proceed.
21            MR. WISNIEWSKI:  Thank you, Judge.
22                        DIRECT EXAMINATION
23   BY MR. WISNIEWSKI:
24   Q    Good afternoon, ma'am.
25   A    Good afternoon.

1  Q    Can you please state your name and spell your last name
2  for the record?
3  A    Fabiola Cintron, C-I-N-T-R-O-N.
4  Q    Thank you.  And how are you employed?
5  A    I'm a Border Patrol agent with the United States Border
6  Patrol.
7  Q    Okay.  And what are your duties as a Border Patrol
8  agent?
9  A    I'm currently assigned to the El Paso Sector
10 Prosecutions Unit where I am a case agent.  I review A-files
11 and submit criminal complaints.
12 Q    Thank you.  In your current duties, did you have
13 occasion to come across a case involving a Leonel
14 Sotelo-Santillan?
15 A    Yes, I did.
16 Q    Do you see that person in the courtroom?
17 A    I do.  He's seated at the first defense table wearing an
18 orange jumpsuit and interpreter headset.  He has a beard.
19 Q    Thank you.
20      MR. WISNIEWSKI:  Your Honor, we would ask the
21 record reflect the identification?
22      THE COURT:  The record will so reflect.
23      MR. WISNIEWSKI:  Thank you.
24 BY MR. WISNIEWSKI:
25 Q    So, Agent Cintron, this case came about on what date?

1  A    May 2nd, 2025.

2  Q    All right.  At that point, Defendant was encountered by
3  Border Patrol agents?

4  A    Yes.

5  Q    Where was he encountered?

6  A    1.22 miles west of the El Paso Del Norte Port of Entry
7  in El Paso, Texas, Western District of Texas.

8  Q    Thank you.  And that location, can you describe for the
9  record what that location is?  In terms of the city of El
10 Paso, if there are any landmarks, anything like that?

11 A    So it's west of the El Paso Del Norte Port of Entry.
12 It's been several years since I've worked in the area.  And
13 when I did, it was very briefly.  There's the port.  Nearby,
14 there's a river; the Vega, which is I believe the floodplain;
15 the levee; and then the border fence.

16 Q    Okay.  You're not super familiar with the area, just
17 sort of the broad strokes?

18 A    Correct.

19 Q    Okay.  Was this area within a National Defense Area?

20 A    Yes.

21 Q    Okay.  How do you know that?

22 A    We were advised by our chain of commander management
23 that effective May 1st of 2025, it was deemed -- it was
24 deemed on the 30th of April but effective the 1st of May, it
25 was considered a restricted area, the National Defense Area.

1  Q     That means it's a military-controlled area?
2  A     Correct.
3  Q     Okay.  And that's supervised by the Department of
4  Defense?
5  A     Correct.
6  Q     Okay.  So Defendant was -- was Defendant found in that
7  area?
8  A     The report indicates that he was encountered north of
9  the fence.  But based on the information that I have in my
10 report, he would have entered through the NDA and then
11 encountered just north of it.
12 Q     Okay.  Can you spell that out, what information --
13 A     The National Defense Area.
14 Q     Oh, sure.  I understand.  But you said your
15 understanding is that he entered through the NDA and the
16 proceeded north --
17 A     Yes.
18 Q     -- of the border fence.  What makes you say that?
19 Because you didn't see this act, correct?
20 A     I did not, no.
21 Q     Okay.  What information are you relying upon to state
22 that?
23 A     So camera control operator observed through an image
24 that came through the system.  It showed three individuals
25 going north.  And when the encountering agent encountered

1   them, he was north of the fence.
2   Q    Okay.  Did the encountering agent encounter all three
3   individuals?
4   A    I'm sorry.
5   Q    Did the arresting agent, did he encounter all three
6   individuals that had been observed?
7   A    That's what's indicated in the report, yes.
8   Q    Okay.  And Defendant was one of those three individuals?
9   A    Yes.
10  Q    Okay.  Did the agent identify the Defendant at that
11  time?
12  A    The agent, once he encountered him, he identified
13  himself as a Border Patrol agent and questioned all three as
14  to their citizenship.
15  Q    Okay.  And what did the Defendant state?
16  A    That he -- he was determined to be an illegal alien, at
17  which point they placed them under arrest.
18  Q    Okay.  Was he transported anywhere?
19  A    He would have been transported to the El Paso Del Norte
20  Processing Center and eventually the Centralized Processing
21  Center --
22  Q    Okay.
23  A    -- after that.
24  Q    All right.  During these various rounds of processing,
25  was his identity confirmed, the Defendant's?

1  A    Yes.  His fingerprints are run, and it returned two
2  prior removals.
3  Q    Okay.  So you confirmed that he's an alien to the United
4  States?
5  A    Yes.
6  Q    What's his country of citizenship?
7  A    He is from Mexico.
8  Q    Okay.  And you said he had previously had immigration
9  history.  Was he previously removed from the country?
10 A    Yes.  He was last removed December 28th, 2024 through El
11 Paso, Texas.
12 Q    Okay.  And you had the opportunity to review his
13 immigration file?
14 A    I conducted my own immigration checks.  I queried his
15 information, and I reviewed the information from there and
16 then as well as his prior removal documents that were
17 provided by NRC.
18 Q    Okay.  Did you find any indication that the Defendant
19 had received permission to re-apply for admission to the
20 United States?
21 A    I did not.
22 Q    Okay.  Now you said that this was a National Defense
23 Area.  Are you familiar with any signage in the area
24 designating it as such?
25 A    My chain of command did advise that there was signage

1  that went up and that was posted at the time that we started
2  charging individuals with -- with the trespassing.
3  Q    Okay.  So you've been informed through your chain of
4  command that signs are posted in this area?
5  A    Correct.
6  Q    Can you describe those signs?
7  A    I haven't seen them.  I've only -- until today, I had
8  only seen pictures or copies of what the sign looks like.
9  From what I saw, it's -- I believe it says "Warning."  I'm
10 not sure what it states in Spanish.  We were advised that
11 they would be in English and in Spanish.
12 Q    Okay.  Now did I ask you, do you know what time the
13 Defendant entered the United States?
14 A    It was a little after 1:00 a.m.
15 Q    Okay, so it was dark?  The sun was down for the --
16 A    It's nighttime, correct.  Uh-huh.
17 Q    Okay.  Do you know, is that area illuminated?
18 A    I believe there are lights throughout the area for the
19 El Paso Station AOR, yes.
20 Q    And this is within the El Paso Station AOR?
21 A    Yes.
22 Q    Okay.  Is it -- you know, based on your knowledge of
23 your Area Of Responsibility, is this continuous illumination
24 or are there areas where it's not illuminated?
25 A    It's been over ten years since I've worked there, so I

1  don't know specifically how the lighting works.  And I'm not
2  assigned to that station permanently, so I don't work there
3  generally.
4  Q    Okay.  You indicated that this was a military area?
5  A    Correct.
6  Q    Are military personnel stationed here as of May 1st,
7  2025?
8  A    To my knowledge, there was National Guard there even
9  before May 1st.
10 Q    Oh, okay.  So prior to and subsequent to May 1st, there
11 was a National Guard presence at the border?
12 A    Yes.
13 Q    Okay.  Including this sector?
14 A    That station, yes.
15 Q    Okay.  Do you know if at the time of Defendant's
16 crossing, that there was a military unit present?
17 A    My report did not indicate if there was or wasn't a unit
18 at that time.
19 Q    Okay.  And you haven't received any information that
20 might verify one way or the other?
21 A    As of today, no.
22 Q    Okay.
23            MR. WISNIEWSKI:  Pass the witness, Judge.
24            THE COURT:  All right.  Mr. Hanshew?
25                       CROSS-EXAMINATION

```
 1  BY MR. HANSHEW:
 2  Q    So you were not there on May the 2nd when Mr. Sotelo was
 3  encountered, correct?
 4  A    Correct.
 5  Q    So the information that relates to your testimony in
 6  your affidavit regarding that encounter comes from other
 7  individuals, correct?
 8  A    Correct, from the I-213.
 9  Q    The I-213?
10  A    Yes, sir.
11  Q    Okay.  And who were the authors of the I-213?
12  A    The I-213, the apprehending encountering narrative was
13  provided by the encountering agent which would have been
14  Jason Hartman (phonetic).  And then at the Centralized
15  Processing Center, it was further -- further information was
16  entered by the processing agent which was Agent Garcia and
17  with the assistance of Border Patrol Processing Coordinator
18  Galindo.
19  Q    So those three individuals were the total number of
20  individuals that prepared the I-213?
21  A    Those are the names indicated on the report, correct.
22  Q    And did you interview any of those three individuals?
23  A    I have not.
24  Q    So the information comes directly and only from the
25  I-213 in terms of your testimony and the affidavit?
```

```
 1   A    Correct.
 2   Q    And you indicated you have not been in the area where
 3   Mr. Sotelo was first seen and apprehended and processed for
 4   the last ten years.  Is that right?
 5   A    So I was recently in the area assisting another agent,
 6   obtained pictures for another case.  But it was during the
 7   daytime.  So it's very limited to what I -- I drove up into
 8   the area and I know that there's the fence, there's barbed
 9   wire, there's National Guard there that are posted.  Other
10   than that, I don't have additional information.
11   Q    Was that before or after May 2nd?
12   A    Before.
13   Q    Was it before May 1st?
14   A    Yes.
15   Q    So that was before this creation of the NDA, correct?
16   A    Correct.
17   Q    So when you were out there, you saw no signs at all,
18   correct?
19   A    Not -- not in the area that I was at, no.
20   Q    And that's the same area that Mr. Sotelo was
21   encountered?
22   A    It's around the area.  Specifically, where he was
23   encountered, no, I -- I don't know specifically where 1.22
24   miles west of Paso Del Norte Port of Entry is.  But I know
25   it's in the vicinity.  I could see the Paso Del Norte Bridge
```

1  from there, and it was probably approximately half a mile
2  from there.
3  Q    In the I-213 Report, did it indicate how close the
4  nearest NDA sign was from where Mr. Sotelo was encountered?
5  A    It did not state anything.
6  Q    Did it indicate whether or not Mr. Sotelo was in the
7  NDA?
8  A    Specifically that, no.
9  Q    Did it state whether or not the agents, any of the
10 agents asked Mr. Sotelo if he knew that it was an NDA?
11 A    It does not.
12 Q    Does it state whether or not any of the agents ever
13 asked Mr. Sotelo if he knew about NDAs?
14 A    No, it does not.
15 Q    You indicated it was approximately 1:00 a.m. in the
16 morning, correct?
17 A    Yes.
18 Q    So you'd agree it was dark out, correct?
19 A    Yes.
20 Q    You indicated there is lighting?
21 A    Correct.
22 Q    But you don't know specifically where that lighting is?
23 A    Correct.
24 Q    And you don't know whether or not there was lighting on
25 an NDA sign, if there was one?

1  A    I do not.
2           MR. HANSHEW:  No further questions, Judge.
3           THE COURT:  Anything else?
4           MR. WISNIEWSKI:  Nothing, Your Honor.
5           THE COURT:  All right.  You can step down.
6      (Whereupon, the witness was excused.)
7           THE COURT:  Any other witnesses or evidence?
8           MR. WISNIEWSKI:  No, Your Honor.
9           THE COURT:  Mr. Hanshew, any witnesses or evidence?
10          MR. HANSHEW:  No, Judge.
11          THE COURT:  All right.  Let me hear your argument.
12          MR. HANSHEW:  Judge, I'll waive argument on
13  detention, as well.
14          THE COURT:  Okay.  Very well.
15          MR. WISNIEWSKI:  Just briefly, Judge.  We do
16  believe that the elements of a 1326 violation have been
17  established here.  There's been evidence, there's been
18  testimonial evidence that the Defendant was found in a
19  location within the Western District of Texas 1.22 miles west
20  of the Paso Del Norte Port of Entry.
21          Upon confirming the Defendant's identity, Border
22  Patrol agents confirmed that he was an alien to the United
23  States who had previously been removed from the United States
24  and that there was nothing indicating that he had received
25  the express permission of the U.S. Attorney General or the

1  Secretary of Homeland Security to reapply for admission.
2              Based on all that, we would ask the Court to bind
3  this one over on a 1326.  We would additionally ask the Court
4  to bind this over on a 797, 50 U.S.C. 797 violation.  The
5  Defendant did enter through a National Defense Area in the --
6  which is within the Western District of Texas.  This is a
7  military area, and there was posted signage.  We do believe
8  that we meet the elements and would ask the Court to bind
9  that over, as well.
10             Should the Court bind over either, we would move
11 for detention based on his alienage and the danger that he is
12 a flight risk.
13             THE COURT:  Thank you.
14             Mr. Hanshew?
15             MR. HANSHEW:  Judge, repetitive argument.  Same
16 argument.  There's no indication that Mr. Sotelo received any
17 notice that this was an NDA.  The testimony was that the
18 agent didn't know where the signs, if any, where they were
19 at, the location as they related to Mr. Sotelo at his
20 crossing.  So, therefore, we'd ask for no probable cause,
21 Judge.
22             THE COURT:  All right.  The Court finds probable
23 cause as to the illegal reentry charge.  It does find no
24 probable cause as to the 797.  There was really no evidence
25 presented to the specifics, as to the specifics of this

1  alleged incident.  No direct evidence that he saw the signs
2  or was aware of the regulation or had made any kind of
3  admission related to it.  Plus not any direct evidence of
4  where the signs were precisely relative to his entry, whether
5  he would have seen them or whether they were conspicuously
6  posted.
7          So I find no probable cause as to the 797.  I'll
8  grant the Government's motion to detain.  I am granting the
9  Government's motion to detain.  I will note that the
10 Defendant does have a lengthy criminal history, and I do find
11 him to be a danger to the community.  And by that, I'm just
12 basing myself on the information that's in the criminal
13 complaint that's been listed.
14         All right.  Let's move on to our next case.
15      (Whereupon, at 2:25 p.m., the proceedings were
16 adjourned.)
17                      *  *  *  *  *

1           C E R T I F I C A T I O N

2           I, DIPTI PATEL, court-approved transcriber, certify

3  that the foregoing is a correct transcript from the official

4  electronic sound recording of the proceedings in the above-

5  entitled matter, and to the best of my ability.

6

7  *[signature: Dipti Patel]*

8  _____

9  DIPTI PATEL, AAERT CET-997

10 Expires: December 6, 2026

11 LIBERTY TRANSCRIPTS          DATE:  July 9, 2025